We move to the fourth case this morning, Schlaf v. Safeguard Property. May it please the Court, Counsel, I'm Daniel Edelman for the Schlafs. Before the Court is one of two inconsistent rulings from the Northern District of Illinois regarding Safeguard's field agent activities. Safeguard sends plainclothes field agents to the homes of defaulted mortgage borrowers, asks them to call the mortgage company, and delivers or hangs a note directing them to do so right away. A caller will get the general customer service line and a collector. Safeguard makes one to three attempts at this. The door hanger with a message is designed by Safeguard. It's in its training materials and it's used for different mortgage companies. The agents are instructed to state they're sent by the mortgage company. They are not to identify Safeguard, they're not to provide FDCPA warnings, and they're not to identify themselves. Plaintiff asks the person who came to his house to identify himself, and the person refused to do so. The agents also report on the status of the property, vacant condition, and that's also necessary to make decisions regarding collection, such as whether the mortgage company should sue on the note or take possession of the property. The main object of the visit is to get the consumer to call, and this short personal message is effective at doing this. It's advertised as being for contacting delinquent borrowers. It's only used for mortgages in default. Mortgage companies do not pay to have these agents visit people who aren't in default. Safeguard says, and the district court in this case agreed, that this isn't debt collection. We don't receive money, and facilitation is not a term in the FDCPA. Well, the FDCPA is very broadly phrased, collects or attempts to collect directly or indirectly, and it's not a proper analysis to suggest what terms could have been included in a statute but weren't, because one can always do that. The statute itself contains a long list of activities, which are similar to those engaged in by Safeguard, and which indicate that what Safeguard does is part of debt collection. There is a specific exemption for process servers, a specialized courier who only works for creditors or debt collectors or their counsel and delivers legal papers. That person was deemed to need an exemption, which indicates that the basic conduct is part of debt collection. The Act specifically covers providing information to debtors and obtaining information from or about them. 1692E10 states that obtaining information by deceptive means is a violation. If that's a violation, obtaining information, whether or not through deception, is necessarily part of debt collection. 1692B says that obtaining information about the location of a debtor is part of debt collection. 1692D6 prohibits telephone calls which do not identify the company which is calling, so that under the decision below, a third-party non-creditor who leaves messages by telephone is engaged in conduct regulated by the FDCPA, but having a person visit the debtor personally and provide exactly the same message isn't, which frankly makes no sense. 1692E14 expands upon D6 and says that a third-party debt collector must operate under its own company name, not that of somebody else. They must identify themselves. And the cases, in fact, are consistent and hold that this type of conduct is debt collection. For example, obtaining information, we have the Romine and Yudis cases. Neither of the defendants in those cases obtained money. They instead provided a somewhat mysterious message, and when the consumer returned a phone call, they were told that somebody was trying to contact them for collection purposes, and more importantly, their number was captured. The phone number from which the return call was placed, and that was sold to a creditor or debt collection. The Ninth Circuit and the Colorado Court of Appeals had no difficulty concluding that this is debt collection activity. There are a number of decisions specifically involving field agent activities, all of which indicate that, apart from the decision below, that this type of activity is, in fact, part of the debt collection process. Mr. Edelman? Yes. We've got a federal regulation that tells lenders or loan servicers in this situation that they have to visually inspect the property, right? That is correct. So a person goes onto the property. We presume he's not trespassing when he does this. Peering into windows, trying to see if the building is occupied. Homeowner arrives home, asks him what's going on. What do you think he or she is obliged to say or do in response? He should identify, if not his personal name, the name of the company that he's actually working for. In this case, Safeguard. Truthfully answer what he is doing there, and within the specified period of five days, provide the notices required. He should, if there's a conversation with the consumer, comply with the 11th. Presumably this person has already received, the debtor has already received plenty of notices at this point, right? At least if the loan servicer is already complying with the law, right? The loan servicer may or may not be subject to the FDCPA. If it's an ordinary mortgage company, they very well may not. If it's their own debt. That is correct. Okay, but if it's a loan servicing company, then it is required, right? A loan servicing company which gets involved with current loans. Wells Fargo, Chase, these are all loan servicing companies. They are not subject to the FDCPA. There is, in fact, a loan servicing exemption which covers mortgage companies which service for others if they acquired or got involved with the debt for default. So it is entirely possible that a person visited by Safeguard has not received any FDCPA warnings from anybody. And under the decision below, if it's not debt collection, this can occur without the warnings being provided at all. As for the defendant makes a point about the HUD regulation, which is what Your Honor referred to, that doesn't mean that the activity isn't debt collection. HUD has guaranteed the loan. The purpose of the HUD regulation is to ensure that mortgage companies handling HUD loans promptly and appropriately pursue collection or seizure of the collateral, which amounts to debt collection. So the fact that HUD may require a report on the condition of the property would not take it out of the FDCPA. Incidentally, what HUD requires is simply a visual and photographic inspection. It does not actually require that they look into the windows. It's usually done from a distance, but it can be done. Counsel, in your view, are there legitimate people that go around and check and see if the properties are occupied and maintain vacant properties? No question. They are, however, well, it is part of the debt collection process. If a person goes out, photographs or looks at the property from a distance and has no communication with anybody, there's no violation, and therefore no lawsuit is brought. But obtaining information about debtors, such as the condition of their collateral, is, in fact, part of the collection process. And some people do it properly. A defendant says, well, our principal purpose isn't debt collection. We do lots of other things, such as board up vacant properties. This is not a principal purpose case. There are two tests. There is collecting on behalf of another as your regular business activity, and there is your principal purpose test. We're only saying that they directly or indirectly collect on behalf of another. Well, how does this company, well, I can ask them. I'll wait and ask them the question. Okay. Safeguard also says that we're just like the Postal Service or UPS, but they're not. The visit of a plainclothes field agent is itself a material part of the message. They're not a clearly uniformed and marked third party who is a common carrier that can act on behalf of anybody. Unless your honors have some other questions, that concludes my comments. Thank you. Mr. Topolis. Good morning, your honors. May it please the court, Panos Topolis on behalf of Safeguard Properties, LLC. I would agree with one thing that counsel said, that this is an indirect debt collector analysis in this case. And I believe that the question before this court is, did the lower court properly analyze the cases and the facts of this case to make its determination that Safeguard is not a debt collector? How does Safeguard, that was going to be my question, I'll ask you. How does Safeguard earn its income? Who pays it and what do you do to get, or what's your compensator? They are paid per a visit to a property by the lenders, depending on what the activity is. Well, do you solicit the lenders? How do you get the jobs that you go out and do? There's a contract with each particular lender, or it could be an insurance company. There's other entities as well. But for the most part, there are contracts and agreements that identify what activity Safeguard does for each entity. And compensation is one of those things. So what you do to at least, you indicated, to maintain vacant properties, right? That's one of the things. Inspections, grass cutting, lock changes if a property is determined to be abandoned. Maintaining the property. Correct, because it's the asset that needs to be maintained. That's it? That's it. Safeguard does not get any money, does not know what the debt is, does not know what amount is owed on the loan, does not get any of that information, is not compensated on a percentage of whether there is some agreement at some further point. Going to the analysis in this case, and we believe that the district court did it properly, it looked at the level of engagement and activity between Safeguard and the plaintiffs in this case. And the court, in fact, the case that was submitted and attached on behalf of plaintiffs, the CIVLEC, S-I-W-E-L-E-C, versus J&M Adjustment Services case, is instructive because it held that the court should look to the defendant's business as a whole in determining whether its principal purpose is debt collection. The court did that, and again, I concede this is not a principal purpose case, but in that case there was contact, there was further follow-up contact, between the entity that was then determined to be a debt collector as to loan modifications, the amount of the loan, how they should be paid. Here, there's none of that evidence. In fact, the amended complaint here alleges one visit where a door hanger was placed, and as the court duly noted here, Mr. Schlapp was not home. So basically, he found the door hanger at the door and then called DITEC or Green Tree per what was listed on the door hanger. Our position is that would be the most least intrusive manner of when doing a visual inspection to determine whether a property is occupied to then leave that door hanger  That's what the facts of this case are, that one door hanger left instructing the debtor to call is enough to make Safeguard a debt collector, and we would argue that it's not because they weren't contacted again. The plaintiffs, as other cases, were not instructed to call Safeguard. Safeguard did not have any intermittent activity to control any money or control anything concerning the loan or payments or anything in that regard. I might assume that a mortgage holder could do the same things that Safeguard does, right? In other words, go out and mow the lawn and board up the windows and so forth. On their own? Yes, they could. But now what has transpired is they have hired entities to do that for them, and that's what Safeguard does. You don't have any contact with the mortgage holder? I mean, separate and apart from the contract to do what you did here. Correct. There's no other contact with the mortgage holder. Would you agree, counsel, that without the regulation or at least a business purpose of preserving collateral, this looks an awful lot like something intended to help collect the debt? That is precisely our argument, that the HUD guidelines require this activity to go on. I would agree with you that if we were just going out basically on a contractual order to go out and look at properties, then yes. Or just leaving door hangers on the doors of people who owe credit card debt. Correct. I would agree with that, and that's why we assert in this case, and why the purpose of why we're out there, and it was testified to by Mr. Van Curen, the non-party representative from Green Tree. In their reply brief, plaintiffs want to discredit his testimony, say it's unbelievable, but that's what he testified to. There's nothing to the contrary to the evidence in this case. He stated this is the purpose, this is why we do these things, this is why we have Safeguard go out to the properties, and there's a specific HUD guideline that says if it's after 45 days, we need to do that. Under that regulation, if for whatever reason, from the door hanger or some other reason, if the debtor reestablishes contact with the loan servicer, is there a continuing obligation to make inspections? It depends on what that contact is. I guess I would have to speculate on what exactly was said, but there could be a situation where there wouldn't be any further inspections, or maybe there may be a situation where there were, but I couldn't answer that directly without specifically what was. Do you enter into written contracts with these lenders? Yes. Yes, each lender has a specific written contract describing what activities and what services that Safeguard would provide, and in this particular case, there was one with DITEC, subsequently GreenTree, which identified those services. And that's part of the record in this? Correct. Yeah, it was attached as an exhibit to Mr. Van Curen's deposition. What is GreenTree's status? Is it a debt collector, or is it subject to one of the exceptions? GreenTree is the lender in this case, so if it was attempting to be a debt collector, I believe it would be attempting to collect its own debt, and I think would be exempt. Thank you. So going back to the analysis that was undertaken by the district court here, I think what's also instructive, and, again, it's never responded to in the reply brief or even in the initial brief, is the first case that was cited was Henson v. Santander, Consumer USA, the recent Supreme Court case related to the FDCPA. And the reason why that case is instructive is not because of the facts and not because it was a door hanger case, but for language that the Supreme Court specifically set forth, and specifically it stated, Indeed, it is quite mistaken to assume, as petitioners would have us, that whatever might appear to further the statute's primary objective must be the law. Safeguard would contend that this is exactly what plaintiffs are trying to do in this case. They're trying to assert that safeguard by putting a door hanger on a door in furtherance of HUD regulations that they're required to do, pursuant to a contract with a client, somehow falls into debt collection because it must be debt collection because there's a defaulted loan here. And we would assert that the court, the underlying court, did the proper analysis because it looked at all the factors that were involved in the level of contact and engagement between safeguard and the plaintiffs and found properly that the mere placement of a door hanger with nothing more, no further contact, not collecting money, Safeguard doesn't advertise the fact that it collects debt for mortgage companies. Safeguard doesn't field phone calls concerning any debt. For all those reasons, the court correctly concluded that safeguard is not a debt collector under the FDCPA. If the courts, if your honors do not have any further questions, I would waive any further argument. Thank you, counsel. Thank you. Your time's up, I think, Mr. Allen. Thanks to both counsel and the cases taken under advisement.